IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FREDERICK BANKS, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 2:13-cv-1152 |
| | ) | Judge Nora Barry Fischer |
| STATE FARM, *et al.*, | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

The Court respectfully recommends that the Complaint be dismissed without prejudice as to Defendants State Farm, Nikole Sullivan, Dan Lnu, Congressman Doyle, Four Unknown Named BOP agents at FCC Forrest City, AK, Warden Anthony Haynes, Captain Wise, and Charles Samuels. It is further recommended that the Complaint as to Judge Brian S. Miller be dismissed with prejudice pursuant to 28 U.S.C. §1915(e)(2)(B)(i) and (iii).

**II.    REPORT**

Plaintiff, Frederick Banks, commenced this lawsuit by filing a Complaint (ECF No. 1) and Motion for Leave to Proceed *in forma pauperis* (ECF No. 2) in the Middle District of Pennsylvania at No. 1:13-cv-02016. The case was transferred to this District on August 8, 2013 and was assigned to the undersigned. This Court granted the motion for leave to proceed IFP on October 17, 2013. Because of the early stage of this litigation, service on the Defendants has not yet been ordered or effectuated.

A.  **Legal Standard**

Plaintiff is proceeding *pro se* and as such, he is entitled to liberal construction of his submissions in federal court. This means that the Court must liberally construe the factual allegations of the complaint because *pro se* pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erikson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation omitted); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). In addition, the court should "'apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name.'" *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veterans Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (citing *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir. 1993)). However, *pro se* litigants are not free to ignore the Federal Rules of Civil Procedure. *Pruden v. Long,* Civ. A. No. 3:CV-06-2007, 2006 WL 3325439, *1 (M.D.Pa. Oct. 24, 2006).

Pursuant to 28 U.S.C. §1915(a), Plaintiff requested and has been granted leave to proceed *in forma pauperis*. Thus, his allegations must be reviewed in accordance with the directives provided in 28 U.S.C. §1915(e). Section 1915(e)(2), as amended, requires the federal courts to review complaints filed by persons who are proceeding *in forma pauperis* and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B). "[A] complaint is malicious where it is abusive of the judicial process and merely repeats pending or previously litigated claims." *Hurst v. Counselman,* 436 F. App'x 58, 59 (3d Cir. 2011) (citing *Crisafi v. Holland,* 655 F.2d 1305, 1309 (D.C. Cir. 1981); *Pittman v.*

*Moore,* 980 F.2d 994 (5th Cir. 1993)). "[A] court may look to its own records to determine whether a pleading repeats prior claims." *Crisafi,* 655 F.2d at 1309 (citing *Van Meter v. Morgan*, 518 F.2d 366 (8th Cir. 1975) (affirming dismissal based on finding by district court that a prior complaint, then pending, was based on same conduct by same defendant); *Duhart v. Carlson*, 469 F.2d 471 (10th Cir. 1972) (approving trial court's dismissal of a complaint, prior to service of process, on the ground that the plaintiffs sought to relitigate issues already litigated)). In addition, when considering whether an action is malicious, a court "'must, in accordance with the definition of the term 'malicious,' engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant.'") *Hurst,* 436 F. App'x at 59 (quoting *Deutsch v. United States,* 67 F.3d 1030, 1086 (3d Cir. 1995)).

"[A] complaint…is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989); *Hawkins v. Coleman Hall, C.C.F.*, No. 11-3467, 2011 WL 5970977, at *2 (3d Cir. Nov. 30, 2011) ("An appeal is frivolous when it lacks an arguable basis either in law or fact." (citing *Neitzke, supra*). Thus, under §1915(e)(2)(B), courts are "authorized to dismiss a claim as frivolous where 'it is based on an indisputable meritless legal theory or where the factual contentions are clearly baseless.'" *O'Neal v. Remus*, No. 09-14661, 2010 WL 1463011, at *1 (E.D.Mich. Mar. 17, 2010) (quoting *Price v. Heyrman*, No. 06-C-632, 2007 WL 188971, at *1 (E.D.Wis. Jan. 22, 2007) (citing *Neitzke*, 490 U.S. at 327)).[1]

---

[1] Dismissal under Section 1915(e)(2) is "often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering [frivolous] complaints[,]" *Neitzke,* 490 U.S. at 324, or complaints which fail to state a claim on which relief may be granted.

3

Thus, because this action asserts the same claims as those pending in Civil Action No. 2:13-cv-1151, many of which have already been found to be meritless, the Court has the authority, pursuant to 28 U.S.C. §1915(e)(2), to review the Complaint prior to service to determine whether dismissal is appropriate.

B.  **Discussion**

This civil action is largely duplicative of a previous lawsuit filed by Plaintiff at Civil Action No. 2:13-cv-1151, also received in this district on August 8, 2013 upon transfer from the Middle District of Pennsylvania. The court of appeals has held that a plaintiff clearly has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Walton v. Eaton Corp.,* 563 F.2d 66, 70 (3d Cir. 1977) (citing *United States v. Haytian Republic,* 154 U.S. 118, 123-24 (1894); *Sutcliffe Storage & Warehouse Co. v. United States,* 162 F.2d 849, 851 (1st Cir. 1947); 1A J. Moore, *Federal Practice* P 0.219 at 2601 (2d ed. 1974); P. Bator, P. Mishkin, D. Shapiro, & H. Wechsler, *Hart & Wechsler's The Federal Courts and the Federal System* 1232-33 (2d ed. 1973)). When a district court becomes aware that two actions commenced by the same plaintiff are virtually identical, the court can either dismiss the second complaint without prejudice or stay the proceedings in the second lawsuit until judgment is entered in the first action. *Id.* As the court of appeals explained in *Walton*: "'The pendency of a prior pending action in the same federal court is ground for abatement of the second action.' . . . There is no reason why a court should be bothered or a litigant harassed with duplicating lawsuits on the same docket . . . . (Citations omitted.)'" *Id.* (quoting *Sutcliffe Storage & Warehouse Co.,* 162 F.2d at 851).

Thus, *Walton* will apply when two civil actions: "(1) take place in the same court; (2) with the same defendants; (3) involving the same subject matter" at the same time. *McKenna v.*

4

*City of Phila.,* 304 F. App'x 89, 92 (3d Cir. 2008). "Parallel complaints need not be completely identical to fall under *Walton*, which proscribes '*substantially* identical complaints.'" *Id.* (citing *Walton,* 563 F.2d at 71 (emphasis added)). For example, in *Walton,* the complaint in the first lawsuit alleged race and gender discrimination under Title VII and expressly waived a jury trial, while the complaint in the second lawsuit added a claim for emotional and mental injury and sought compensatory damages as well as a jury trial. *Walton,* 563 F.2d at 69-70. The court of appeals in *McKenna* noted that these differences were not enough to allow the plaintiff in *Walton* to proceed with both lawsuits. *McKenna,* 304 F. App'x at 92. Similarly, in *McKenna,* the first civil action involved a Title VII retaliation claim based on the plaintiff's opposition to illegal discrimination but did not advance a claim putting his termination at issue, while the second action involved a Section 1983 retaliation claim based on the First Amendment right to free speech and placed his termination at issue. *Id.* The court of appeals in *McKenna* found that these differences were not significant enough to distinguish the two actions under *Walton*, explaining that both the Title VII and Section 1983 retaliation claims were based on the same nucleus of operative facts and legal principles, and plaintiff failed to identify any specific conduct or occurrence beyond the scope of the first action to render *Walton* inapposite to the First Amendment claim. *Id.*

The Court will examine the claims asserted in this civil action to determine whether they are substantially identical to those asserted in Civil Action No. 2:13-cv-1151, thereby triggering the application of *Walton.*

1. **Claims Against Defendants State Farm, Nikole Sullivan, Dan Lnu, Congressman Mike Doyle, Four Unknown Named BOP Agents of FCC Forrest City, AR, Warden Anthony Haynes & Captain Wise**

In both the instant matter and Civil Action No. 2:13-cv-1151, Plaintiff has alleged identical state common law claims for breach of contract and fraud against State Farm, Nikole Sullivan, and Dan Lnu (collectively, the "State Farm Defendants"), seeks an identical writ of mandamus against Congressman Mike Doyle to compel him to intervene and investigate the fraud and fraudulent activity allegedly committed by State Farm agent Dan Lnu, requests identical damages under the Sioux Treaty of Fort Laramie, 15 Stat. 635 (1868), and the Northwest Ordinance, and requests that his allegations of criminal wrongdoing be presented to a grand jury pursuant to 18 U.S.C. §3332. (Compl. ¶¶ 3&4.)

As in Civil Action No. 2:13-cv-1151, these claims and the supporting allegations derive from State Farm's denial of Plaintiff's 2013 claim for wind and storm damage that allegedly occurred in 2001 from Tropical Storm Allison on property located at 52 South 8th Street, Pittsburgh, PA 15203 (the "Property"), which was protected by an insurance policy issued by State Farm. (Compl. at ¶¶1, 4.) Identical to Civil Action No. 2:13-cv-1151, Plaintiff's fraud claim in the case at bar derives from the State Farm Defendants' alleged misrepresentations as to why they were denying his claim. (Compl. ¶6.) With regard to his petition for writ of mandamus against Congressman Doyle, Banks alleges in both civil actions merely that he contacted Congressman Doyle on the same date that he learned that State Farm/Dan Lnu was denying his claim and requested that Doyle intervene in this matter. (Compl. ¶3.)

Likewise, as in Civil Action No. 2:13-cv-1151, here Banks has named as Defendants four unknown named BOP agents of FCC Forrest City, Arkansas, operating remote neural monitoring from FCC Forrest City, AR Special Housing Unit ("BOP agents"), Warden Anthony Haynes,

and Captain Wise (collectively the "FCC Forrest City Defendants"). (Compl. ¶10.) Similar to his allegations in Civil Action No. 2:13-cv-1151, here Banks claims that the BOP agents utilized remote neural monitoring ("RNM") during June and July of 2013 to harass him and influence the State Farm Defendants to deny his property damage claim. (*Id.*) Also similar to Civil Action 2:13-cv-1151, Banks alleges as to Warden Haynes and Captain Wise that they personally directed the improper and intentional acts of the BOP agents. (Compl. ¶11.) Newly asserted in the instant matter is the contention that as a result of the BOP agents' improper conduct, they are liable to him for their violations of his Fifth Amendment due process rights in the amount of $47 million. (Compl. ¶10.) In addition, Banks asks that the FCC Forrest City Defendants be dismissed from employment and reprimanded. (Compl. ¶11.)

In the Court's view, the slight differences noted above with regard to the claim against the FCC Forrest City Defendants are purely semantic. Although Banks actually labels his claim as a Fifth Amendment due process claim in this action, and fails to allege a violation of any constitutional rights in Civil Action No. 2:13-cv-1151, both claims are premised on the same nucleus of operative facts and legal principles—Defendants' alleged use of RNM to interfere with Plaintiff's property damage claim with State Farm and to harass him—which this Court found to be frivolous in Civil Action No. 2:13-cv-1151, as well as in other lawsuits filed by Banks. *See* Order dated 8/20/13 (ECF No. 10), *Banks v. Realty Counseling Co., et al.,* No. 2:13-cv-1025, W.D.Pa.; Report and Recommendation dated 10/1/13 (ECF No. 7), *Banks v. Unknown Named No. of U.S. Postal Inspectors, et al.*, No. 2:13-cv-1198, W.D.Pa. (recommending that Plaintiff's motion for leave to proceed *in forma pauperis* be denied because the civil action attempts to assert claims (including one based on RNM) previously litigated and/or determined to be frivolous). *See also* Order dated 7/3/13 (ECF No. 7), *Banks v. Thompson, et al.,* No. 4:13-

cv-00382-BSM (E.D.AR) (Judge Brian Miller) (dismissing claim based on RNM as frivolous). As such, the claims against the FCC Forrest City Defendants are substantially identical for purposes of applying *Walton.* 563 F.2d at 73 (finding the addition of an allegation of "emotional and mental injury" in the subsequent litigation did not change the "basic issue" or "general area of dispute" vis a vis whether the employer discriminated against plaintiff).

The Court further finds that the relief sought in both civil actions is substantially identical. In both civil actions, Plaintiff seeks total damages in the amount of $314,000 plus costs, interest and fees. (Compl. at ¶7.) He also seeks injunctive relief in the form of an order enjoining Defendants from further activity and directing them to personally apologize to him for their actions, as well as an order requiring that the evidence of Dan Lnu's criminal wrongdoing be presented to a grand jury pursuant to 18 U.S.C. §3332. (Compl. ¶¶4, 7.) In the case at bar, Plaintiff requests an additional $47 million in damages from the FCC Forrest City Defendants, as well as additional injunctive relief—the termination of their employment. (Compl. ¶¶10-12.) The Court finds that the nature of the relief sought has not changed but only the amount of damages requested and the severity of the reprimand sought. This is a distinction without a difference and therefore does not preclude the application of *Walton.*

2. **Claim Against Charles Samuels**

Banks has named Charles Samuels as a Defendant in this action, but has not named him as a defendant or mentioned him in the Complaint filed in Civil Action No. 2:13-cv-1151. However, that does not preclude the application of *Walton.* The sole allegation against Defendant Samuels is that the "willfull, intentional, knowing, intelligent, purposeful and malicious" activities of the BOP agents "was personally directed by Charles Samuels while sitting in his office in Washington, D.C." (Compl. ¶11.) The Court takes judicial notice of the

8

fact that Charles E. Samuels, Jr., is the Director of the Federal Bureau of Prisons, having been appointed to that position on December 21, 2011. *See* http://www.bop.gov/about/co/director_bio.jsp, last visited on 10/25/13. Merely by naming the "director" of the Federal BOP as a defendant in this action does not change the character of the claims asserted in this civil action. Plaintiff's Fifth Amendment due process claim against the BOP agents, Warden Haynes, Captain Wise and Director Samuels here is premised on the same operative facts and legal theories as those asserted in Civil Action No. 2:13-cv-1151—that the BOP agents used, under the direction of Warden Haynes and Captain Wise, RNM to harass him and interfere in his property damage claim with State Farm. Plaintiff's sole allegation as to Defendant Samuels is that he too directed the actions of the BOP agents, albeit from his office in Washington, D.C. As such, the Court finds that this action does not raise a new claim or issue as to the BOP Defendants, but merely adds another BOP official, who is alleged to have engaged in similar conduct, and from whom Plaintiff hopes to recover some or all of the $47 million in damages he is seeking, and to have Samuels discharged from his position. Accordingly, the Court finds that the two civil actions are substantial identical despite the inclusion of Defendant Samuels in the instant matter, and thus, the application of *Walton* is not precluded.

### 3. Claim Against Judge Brian S. Miller

In addition, Banks has added Judge Brian S. Miller, United States District Judge for the Eastern District of Arkansas, as a Defendant in the case at bar. Banks alleges that Judge Miller improperly denied his claims in *Banks v. Thompson,* Civil Action No. 4:13-cv-00382-BSM, "relating to 'brainwave monitoring' also known to the public at large as 'remote neural monitoring' stating that [he] filed 42 U.S.C. 1983 claims when [Judge Miller] damn well knew [he] filed a Bivens action against federal Defendants." (Compl. ¶10.) Banks further contends

that Judge Miller denied him due process in violation of the Judicial Code of Conduct and the Canons, and requests that this Court issue a writ of mandamus removing Judge Miller from the bench. (Compl. ¶12.) In support of his claim, Banks further alleges:

> [Judge] Miller stated that Banks allegations relating to remote neural monitoring ("brainwave monitoring") were frivilous (sic) when at the time he very well knew that over 100,000 americans are on a daily basis being harassed by the U.S. government using this technology and Banks is being harassed by the BOP defendants in violation of his Constitutional rights. These BOP agents are also using terms of endearment used by Banks' exfiance to harass him Banks gf referred to him as "bippy" the agents mentally harass Banks using this term.

(*Id.*) For relief, Banks requests damages in an amount exceeding $47 million, and a writ of mandamus removing Judge Miller from the bench. (*Id.*)

The Court notes that Plaintiff's claim against Judge Miller is not based on the same operative facts and legal theory as those asserted in Civil Action No. 2:13-cv-1151, and therefore, at first blush, would appear to preclude this Court from applying *Walton*. However, because Plaintiff's claim against Judge Miller is not premised on the same nucleus of operative facts and legal theories, it was not properly joined in this civil action in the first instance, and therefore, may be dismissed from this lawsuit.

Here, Plaintiff's claim against Judge Miller derives from Plaintiff's disagreement with Judge Miller's order dismissing as frivolous Plaintiff's claims in *Banks v. Thompson,* Civil Action No. 4:13-cv-00382-BSM, "relating to 'brainwave monitoring' also known to the public at large as 'remote neural monitoring'". (Compl. ¶10.) Specifically, Plaintiff appears takes issue with Judge Miller's finding that [he] filed 42 U.S.C. 1983 claims when [Judge Miller] damn well knew [he] filed a Bivens action against federal Defendants." (*Id*.) Banks further contends that Judge Miller denied him due process in violation of the Judicial Code of Conduct and the

10

Canons, and requests a writ of mandamus removing Judge Miller from the bench. Thus, Plaintiff's claim against Judge Miller does not derive from the State Farm's denial of his property damage claim or the FCC Forrest City Defendants alleged interference with that claim and harassment of Plaintiff. If Plaintiff was dissatisfied with the result in the civil action before Judge Miller, his proper course of action was to file an appeal to the court of appeals for that district. Instead, he chose to name Judge Miller, who sits in the Eastern District of Arkansas, as a Defendant in this lawsuit filed originally in the Middle District of Pennsylvania and transferred to this district, also in Pennsylvania. Notwithstanding this Court's lack of personal jurisdiction over Judge Miller, he was improperly joined in the first instance and, in any event, is entitled to judicial immunity.

A plaintiff may only join as parties in the same lawsuit those defendants against whom the claims arise from the same transaction or occurrence *and* involve a question of law or fact common to all defendants. Fed. R. Civ. P. 20(a)(2). Rule 20(a)(2) provides in relevant part:

> Persons . . . may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Thus, while Plaintiff may combine multiple unrelated claims against a single defendant in a lawsuit, he cannot combine unrelated claims against multiple defendants in one lawsuit. *Kedra v. City of Phila.,* 454 F.Supp. 652, 661 n. 6 (E.D. Pa. 1978) ("The Federal Rules permit unlimited joinder of claims against an opposing party (Fed.R.Civ.P. 18(a)), but in multiparty cases joinder is limited by the requirement of Rule 20(a) that plaintiffs or defendants may not be joined in the

11

same case unless some of the claims by or against each party arise out of common events and contain common factual or legal questions.")

In the case at bar, Plaintiff has joined a claim against Judge Miller that does not arise out of the same transaction or occurrence as alleged against the State Farm Defendants and FCC Forrest City Defendants. Accordingly, Judge Miller has been improperly joined in this civil action, and therefore, should be dismissed.

Although dismissal of a claim for improper joinder under Rule 20(a)(2) is usually without prejudice, Banks' claim against Judge Miller should be dismissed with prejudice under 28 U.S.C. §1915(e)(2)(B)(i) and (iii), as it is barred by the doctrine of judicial immunity. Generally, a judicial officer who is performing his or her duties has absolute immunity from suit. *Mireles v. Waco*, 502 U.S. 9, 12 (1991). Judicial immunity is absolute and cannot be overcome by allegations of bad faith or malice. *Id*. at 11. Rather, the only two exceptions to judicial immunity are for non-judicial actions or for a judicial action taken in the complete absence of jurisdiction. *Id*. "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). Under the law of this circuit, "[a] judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." *Capogrosso v. Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009) (internal quotation marks omitted). "'A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted 'in the clear absence of all jurisdiction.'" *Id*. (quoting *Stump*, 435 U.S. at 356-57).

Here, it is clear that the actions of Judge Miller of which Banks complains do not fall within either of the two exceptions to judicial immunity. It is beyond dispute that Judge Miller was acting in his capacity as a judge when he issued the order dismissing Banks' claim based on RNM as frivolous, in a federal civil action over which he had jurisdiction. As such, Judge Miller should be dismissed from this action with prejudice pursuant to 28 U.S.C. §1915(e)(2)(B)(i) and (iii) because he is entitled to judicial immunity. As the Court has recommended dismissal with prejudice of the only claim that does not involve the same operative facts and legal theory as those alleged in Civil Action No. 2:13-cv-1151, and because this claim was improperly joined in the first instance, any hurdle to applying *Walton* here has been removed.

### C. <u>Conclusion</u>

Because the claims and the supporting allegations against the State Farm Defendants, Congressman Doyle, and the FCC Forrest City Defendants, including Defendant Samuels, are substantially identical to those asserted in Civil Action No. 2:13-cv-1151, *Walton* applies. Therefore, based on *Walton* and the reasons set forth above, the Court recommends that the Complaint be dismissed without prejudice as to Defendants State Farm, Nikole Sullivan, Dan Lnu, Congressman Doyle, Four Unknown Named BOP agents at FCC Forrest City, AK, Warden Anthony Haynes, Captain Wise, and Charles Samuels. It is further recommended that the Complaint as to Judge Brian S. Miller be dismissed with prejudice pursuant to 28 U.S.C. §1915(e)(2)(B)(i) and (iii).

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections. Any party opposing the

objections shall have fourteen (14) days from the date of service of objections to respond thereto.

Failure to file timely objections will constitute a waiver of any appellate rights.


Dated: October 28, 2013                                         BY THE COURT:

                                                                          s/Lisa Pupo Lenihan
                                                                        LISA PUPO LENIHAN
                                                                       Chief U.S. Magistrate Judge

cc:    Frederick Banks
        P.O. Box 42303
        Pittsburgh, PA 15203
        *Via U.S. First Class Mail*

        Frederick Banks
        USMS # 05711068
        North East Ohio Correctional Center
        2240 Hubbard Road
        Youngstown, OH 44505
        *Via U.S. First Class Mail*